STATE OF VERMONT
ENVIRONMENTAL COURT

}
In re: Dunmore Acres                     }              Docket No. 97-5-07 Vtec
(Appeal of Pitkin, et. al.)              }
                                         }

## Judgment Order

This appeal was taken by a number of neighbors[1] who were concerned about the planned sale of "Dunmore Acres," a/k/a "Camp Dunmore" to Stacey Cutliff and her operating company, Camp Sagebrook, LLC, (hereinafter collectively referred to as "Camp Sagebrook") with the intention of operating a summer residential camp for girls in the approximate age range of seven to fifteen,[2] together with other related activities when the girls' camp is not in session.

The procedural history of this case is somewhat unique. In the course of conducting their respective due diligence investigations for the purchase and sale of Dunmore Acres, Camp Sagebrook and the sellers inquired of the Town of Leicester ("Town") as to what approval or certification would be needed to continue the planned camp operations. As a consequence of those discussions, Kathleen and Neil Mackey, the owners of Dunmore Acres, filed an application for conditional use approval with the Leicester Zoning Board of Adjustment ("ZBA").

By its decision of April 12, 2007, the ZBA concluded that Camp Dunmore was a campground[3] that was "grandfathered" since its use pre-dated the Town Zoning Regulations ("Regulations"). The ZBA further concluded that the planned future use of the property by Camp Sagebrook was not materially different from the past use of Dunmore Acres. While the ZBA reasoned that it did "not see any substantial change of use at this time" it cautioned that "if

---

[1] This appeal was jointly filed by Francis & Lorraine Abramson, Chris & Ginger Michaels, Ann & Bruce Perreault, Linda & William Pitkin, Jeffrey & Susan Wallin, and Nancy Tellier. All neighbors, with the exception of William & Linda Pitkin, entered into an oral agreement with Camp Sagebrook and the current owners of Camp Dunmore – Kathleen & Neil Mackey – which led to those neighbors no longer objection to the operation of Camp Sagebrook. This oral agreement was memorialized in a written agreement, an unsigned copy of which was admitted into evidence at trial as Applicants' Exhibit 4. Mr. and Mrs. Pitkin remained concerned about the operation of Camp Sagebrook and therefore prosecuted their appeal at trial.

[2] Camp Sagebrook's business plan, admitted at trial as Appellants' Exhibit D, provides a summary of how the camp plans to "embrace all girls" in this age range. Appellants' assertion that this camp was planning to serve "troubled girls" was not supported by the credible evidence admitted at trial.

[3] The ZBA did not define the term "campground" in its April 12, 2007 Decision.

there is [any new] construction or a major use change then the proper permits must be obtained." The concerned neighbors thereafter appealed the April 12, 2007 ZBA Decision to this Court.

A trial was conducted before this Court in this de novo appeal on September 12, 2007. Applicants and Appellants Pitkin were afforded a full opportunity to present evidence during the merits hearing. The Court thereafter took a recess to deliberate on the evidence and applicable law, and then reconvened the hearing to announce on the record its Findings and Conclusions. Based upon such Findings and Conclusions, the Court enters this Judgment Order.

1. Dunmore Acres, a/k/a Camp Dunmore has operated as a lawful use that pre-dates the Zoning Regulations. The term best suited to define the use of the property is as a seasonal campground,[4] although not as that term is defined in the Regulations. For purposes of describing the prior use of Dunmore Acres, and the allowed future use of Camp Sagebrook, we rely upon the definition of "campground" found in 10 V.S.A. § 1972(3).

2. We specifically conclude that, as a lawful pre-existing, non-conforming use, the continued use of the subject property does not require the issuance of conditional use approval under the Town Regulations.

3. The proposed future use of Camp Sagebrook shall be limited to a campground use that accommodates no more than fifty-five campers. Any further material expansion of the use or any further development of the property, including the addition or expansion of buildings from what now exists, may require new review and approval from municipal and state authorities.

4. The fact that Camp Sagebrook plans to have some part- and full-time staff, including staff that collectively cook meals for the campers, is not of a sufficient difference or increase in activity as to constitute an unlawful expansion of this lawful, pre-existing, non-conforming use, particularly since some of the planned activities at Camp Sagebrook (sailing, individual cookouts, personal water crafts, etc.) will be of a less intensive nature than that which occurred in the past at Dunmore Acres. For this reason, the planned future use of Camp Sagebrook shall be limited to fifty-five campers, not including full- or part-time staff, provided such staff does not materially exceed that as was represented at trial (i.e.: two staff for every ten girls, with a

---

[4] The historical season for Dunmore Acres ran from approximately Memorial Day to Columbus Day, with occasional special events, such as family reunions, weddings and wedding receptions before, during or after those seasonal limits

staff member residing in each of the nine cabins on the property and up to three staff in the farmhouse.)

Done at Newfane, Vermont this 4th day of October, 2007.

_____
Thomas S. Durkin, Environmental Judge